Todd M. FRIEDMAN (SBN 216752)
ADRIAN R. BACON (SBN 280332)
**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
21031 Ventura Boulevard, Suite 340
Woodland Hills, CA 91367
Tel: (323) 306-4234
Fax: (866) 633-0228

David D. Bibiyan (SBN 287811)
*david@tomorrowlaw.com*
Vedang J. Patel (SBN 328647)
*vedang@tomorrowlaw.com*
**BIBIYAN LAW GROUP, P.C.**
1460 Westwood Boulevard
Los Angeles, California 90024
Tel: (310) 438-5555; Fax: (310) 300-1705

Attorneys for Plaintiff,
IRVING CARLOS ZUNIGA, on behalf of himself
and all other similarly situated and aggrieved

## UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| IRVING CARLOS ZUNIGA, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>HOUSE FOODS AMERICA CORPORATION, a California corporation; HOUSE FOODS HOLDING USA, INC., a California corporation; and DOES 1 through 100, inclusive,<br><br>        Defendants | Case No.  8:22−cv−00372−JWH−JDEx<br><br>Assigned to: John W. Holcomb<br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**<br><br>**DATE: October 25, 2024**<br>**TIME: 9:00 AM**<br>**COURT: 9D**<br><br>[Filed and Served Concurrently with Declaration of Adrian R. Bacon; Declaration of David D. Bibiyan; Declaration of Irving Carlos Zuniga;  [Proposed] Order ] |

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

     **PLEASE TAKE NOTICE** that on Friday, October 25, 2024 at 9:00 a.m., before the United States District Court, Central District of California, Courtroom 6D, 411 W. 4th Street, Santa Ana, California 92701 (9th Floor) Plaintiff Irving Carlos Zuniga ("Plaintiff") will move this Court for an order granting final approval of the class action settlement and certification of the settlement class as detailed in Plaintiff's Memorandum of Points and Authorities.

     The Parties met and conferred, and Defendant indicated that it would not be opposing this Motion.

     This Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the declarations and exhibits thereto, the Complaint, all other pleadings and papers on file in this action, and upon such other evidence and arguments as may be presented at the hearing on this matter.

Date: September 27, 2024         **The Law Offices of Todd M. Friedman, PC**

                          By:  */s/ Todd M. Friedman*
                            Todd M. Friedman
                            *Attorneys for Plaintiffs*

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................1

PROCEDURAL HISTORY ....................................................................2

SETTLEMENT .......................................................................................2

    The Fairness Hearing................................................................3

    Attorneys' Fees, Costs Application, And Service Awards .......................3

    Class Action Settlement Terms ...............................................3

        The Class .............................................................3

        Class Recovery ....................................................4

ACTIVITY IN THE CASE AFTER PRELIMINARY APPROVAL ......................4

    CAFA Notice ............................................................................4

    Email and Mail Notice .............................................................4

    Claims Procedure, Including Expenses, And Claims Received................5

        No Objections and No Requests For Exclusion ...................................5

        Settlement Checks ................................................6

THE PROPOSED SETTLEMENT IS FUNDAMENTALLY FAIR, REASONABLE, AND ADEQUATE, AND SHOULD BE FINALLY APPROVED..........................................................................................6

    The Settlement Should Be Finally Approved by the Court ......................6

    The Strength of The Lawsuit and The Risk, Expense, Complexity, and Likely Duration of Further Litigation.........................................8

    The Amount Offered In Settlement..........................................9

    The Extent of Discovery Completed.....................................11

    The Experience and Views of Class Counsel ....................................11

    The Reaction of Class Members To The Settlement .........................12

    The Rule 23(e)(2) considerations favor approval. ............................12

The Notice Program Complied with Rule 23 and Due Process ...............13

CONCLUSION .......................................................................................15

1

## <u>Table of Authorities</u>

2

**Cases**

3

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610 (N.D. Cal. 1979).....................................11

4

*Chavez v. PHC Corp.*, No. 13-cv-01797-LHK, 2015 WL 581382 (N.D. Cal. Feb.

5

    11, 2015)..................................................................................................................14

6

*Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15 (N.D. Cal. 1980), aff'd 661 F.2d

7

    939 (9th Cir. 1981) ................................................................................................7

8

*Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975) ...........................................................7

9

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ....................................6, 7

10

*In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ........13

11

*In re Diamond Foods, Inc.*, 2014 U.S. Dist. LEXIS 3252 (N.D. Cal. Jan. 10,

12

    2014).......................................................................................................................5

13

*In re Ferrero Litig.*, 2012 U.S. Dist. LEXIS 1517 (S.D. Cal. Jan. 23, 2012) ...........7

14

*In re Global Crossing Sec. ERISA Litig.*, 225 F.R.D. 436 (E.D. Pa. 2000) ............10

15

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) ............................10

16

*In re Mercury Interactive Corp.*, 618 F.3d 988(9th Cir. 2010) ..............................13

17

*In re Warner Communications Sec. Litig.*, 618 F. Supp. 735 (S.D. N.Y. 1985) .7, 11

18

*Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*, 654 F.3d

19

    935 (9th Cir. Cal. 2011)........................................................................................8

20

*Linder v. Thrifty Oil Co.*, 23 Cal. 4th 429 (Cal. 2000) ...........................................10

21

*M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819 (D. Mass.

22

    1987) ................................................................................................................7, 11

23

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)....................14

24

*Nat'l Rural Telcoms. Coop. v. Directv, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004)....7, 9

25

*Officers for Justice v. Civil Service Com'n of City and County of San Francisco*,

26

    688 F.2d 615 (9th Cir. 1982) ........................................................................6, 7, 9

27

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ...........................................14

28

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009) .........................7

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ...................................7

*Steinfeld v. Discover Fin. Servs.*, 2014 U.S. Dist. LEXIS 44855 (N.D. Cal. Mar. 31, 2014) ...........................................................................12

*Stemple*, 2016 U.S. Dist. LEXIS 157207 ...............................................12

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993) ............................7

*Wilson v. Airborne, Inc.*, 2008 U.S. Dist. LEXIS 110411 (C.D. Cal. Aug. 13, 2008) ...........................................................................14

*Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008) ........11


**Other Authorities**

2 Newberg on Class Actions (4th Ed. & Supp. 2002) ...............................11

Federal Judicial Center's Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide (2010).........................................14

Manual for Complex Lit., Fourth § 30.42 ...........................................11

**Rules**

Fed. R. Civ. P. 23(e) .................................................6, 8, 12, 13

## <u>MEMORANDUM OF POINTS & AUTHORITIES</u>

Plaintiff Irving Carlos ("Plaintiff" or "Mr. Zuniga") requests final approval of this proposed class action settlement agreement (the "Settlement Agreement," Dkt. 51-2 Ex. 1) with Defendant HOUSE FOODS AMERICA CORPORATION, a California corporation and HOUSE FOODS HOLDING USA, INC., a California corporation. (the "Defendants" or "House Foods").

## I.    INTRODUCTION

This Settlement provides for significant relief for Class Members allegedly harmed by Defendants' alleged practices of conducting unlawful background checks on prospective and current employees prior to making a conditional offer of employment and other wage-and-hour violations.   The Settlement Agreement, reached after extensive adversarial proceedings and an all-day mediation session before Todd Smith, Esq.  provides for a significant financial benefit of a $75,000 common fund to approximately 126 Class Members who were affected by Defendants' alleged practices.  Class Members do not need to submit a claim form to receive payment and will be paid a pro-rata share of the Settlement Fund after administration costs and incentive award are deducted.[1]

The Notice Plan approved by the Court has been implemented successfully by the parties and the Court-approved Settlement Administrator Phoenix Settlement Administrators ("Phoenix" or "Settlement Administrator"). The Mail Notice was successfully delivered to approximately 100% of identified Class Members.  The reaction of the Class has been very positive. There are no objections to the settlement. There is also only one opt out to the settlement.

Given that Class Members do not need to submit a claim to receive payment, and that no Class Members have opted out to date, Class Members will receive, on average, an estimated payment of either $272.61 or $545.23,[2] depending on the

---

[1] Defined terms are used as defined in the Settlement Agreement.

[2] Aggrieved employees will additionally receive a portion of the PAGA payment.

number of credits. (Declaration of Lluvia Islas ¶ 12*).*   The Settlement is abundantly fair and reasonable and should be finally approved.

## II.    PROCEDURAL HISTORY

Plaintiff filed A Motion for Preliminary Approval on March 19, 2024 (Dkt 51). On April 9, 2024, The Court Ordered Plaintiff to Submit Additional Briefing regarding the Proposed Method of Seeking Attorneys' Fees and Litigation Expenses pursuant to the settlement. (Dkt 54).  Plaintiff filed said briefing on April 22, 2024 with an accompanying declaration. (Dkt 55). The Court granted Preliminary Approval of the Settlement of this matter on May 3, 2024 (Dkt 56). On June 3, 2024, the matter as reassigned to this Honorable Court. (Dkt 59).

## III.    SETTLEMENT

In an earnest attempt to settle the action and avoid the risks inherent in proceeding to trial, the parties engaged in a mediation with renowned Employment mediator Todd Smith, Esq.  The Settlement Agreement resulted from extensive arm's length negotiations and a private mediation on June 26, 2023.  The parties were ultimately able to resolve the case at this private mediation through Mr. smith's guidance.  The parties also conducted all necessary discovery, including discovery pertaining to the issues of class scope, damages, financial viability, and class certification issues.

Despite strong views about both merits and certification issues from both sides, the parties engaged in settlement negotiations, and during the mediation sessions, were able to reach an understanding with the assistance of Mr. Smith, the terms of which are memorialized in the Agreement.  As explained below, all of the factors that courts consider weigh in favor final approval of the proposed Settlement. The relief provided by the settlement is significant, particularly given the risk and expense of continued litigation. The settlement ensures that class members are compensated without delay and eliminates the risk of loss at trial or on appeal.  The parties are fully apprised of the strengths and weaknesses of the claims and defenses.

Class Counsel have successfully litigated many employment class cases and fully support the settlement. And that no class members objected and only one opted out further supports final approval of the settlement. Plaintiff requests that the Court finally approve the settlement as fair, reasonable and adequate.

## A.    The Fairness Hearing

At the Fairness Hearing scheduled for October 25, 2024, the Court will decide whether to finally approve the Settlement and whether to grant Class Counsel's request for attorneys' fees, actual litigation costs, and service awards to the Class Representative.

## B.    Attorneys' Fees, Costs Application, And Service Awards

Class Counsel seek $120,000 in attorneys' fees and costs to be paid outside the common fund  to be paid outside the common fund and a service award in the amount of $7,500 to the Class Representative.

## C.    Class Action Settlement Terms

The significant terms of the Settlement are as follows:

### 1.    <u>The Class</u>

The "Class" had been previously certified by Judge Carney Court (Dkt. No. 56) and is defined the same in the Agreement as follows:

> *"*(1) FRCA Class Members: all current, former, and prospective employees of Defendant who applied for a position with Defendant and had a Background Check performed during the period from October 15, 2019 through June 16, 2023 ("FCRA Class Period").
>
> (2) BTB Class Members: all current and former employees of Defendant in the State of California who applied for a position with Defendant and had a Background Check performed during the period from November 19, 2018 through June 16, 2023 ("BTB Class Period").
>
> (3) Aggrieved Employees: all current and former employees of with Defendant and had a Background Check performed during

the period from March 30, 2020 through June 16, 2023 ("PAGA Period").

The Class consisted of 127 Class Members. Islas Decl. at ¶ 6.

### 2.    <u>Class Recovery</u>

The Settlement provides for a significant financial benefit of a $75,000 Common Fund, which will be distributed on a pro rata basis (after the deduction of administration expenses, the incentive award and PAGA Payments) to all members of the Class. The total *estimated* distributable fund going to Class Members is $54,250.00. Islas Decl. at ¶ 11. As of November 3, 2023, Phoenix has received only one opt out. Islas Decl. at ¶ 8. Moreover, class members <u>do not</u> need to submit a claim form to receive payment. Based on these numbers, it is presently estimated that each Class Member will receive either $272.61 or $545.23, depending on the amount of credits. Phoenix will send the settlement checks via U.S. mail within thirty (30) days of receiving approval from counsel to the Parties that judgment has become final.

Class Members shall be advised that the checks must be cashed within one hundred and eighty (180) days. After the 180-day period for approved Class Members to cash their check has run, the Settlement Administration shall stop payment on all outstanding checks, and any residual amounts left uncashed shall be distributed to the California Controller's Office, Unclaimed Property Fund. The Class Recovery shall not revert to Defendant.

## V.    ACTIVITY IN THE CASE AFTER PRELIMINARY APPROVAL

### A.    CAFA Notice

Phoenix mailed CAFA notice on May 13, 2024, in compliance with 28 U.S.C. § 1715(b). Islas Decl. ¶ 3.

### B.    Class Notice

Phoenix complied with the notice procedure set forth in the Preliminary Approval Order. Defendants' records, produced in discovery, included the mailing

address and telephone number for all Class Members. For those Class Members whose mailing addresses were not contained in Defendant's records, Phoenix was able to conduct a reverse-lookup through the other provided information and obtain the mailing address of all Class Members. Islas Decl. ¶¶ 4–6.

Thereafter, Phoenix coordinated and caused Notice to be mailed via First-Class Mail to Class Members. *Id.* at ¶ 6. Prior to mailing notice, Phoenix updated the Class Member contact information using the National Change of Address ("NCOA") database, maintained by the United States Postal Service ("USPS"), for purposes of updating and confirming the mailing addresses of the Class Members before mailing the postcard notice. *Id.* at ¶ 5. In all, 127 Class Members were mailed a Notice which was not returned as undeliverable, representing 100% of total Class Members. *Id.* at ¶ 7.

**C.    Claims Procedure, Including Expenses, And Claims Received**

As indicated above, Class Members were not required to submit a claim to receive payment. Phoenix has received only one opt out to date. Id. at ¶ 8. Thus, checks will be mailed to all Class Members for whom a valid address can be located, which is all of them.

**1.    No Objections and One Request For Exclusion**

Class Members were permitted to opt-out[3] or to submit an objection. The deadline to submit a request for exclusion or object was July 12, 2024. As of July 12, 2024, Phoenix has received only one request for exclusion, and there are no objections to the Settlement. *Id.* at ¶¶ 8–9. The fact that there are no objections and no exclusion requests out of 1,772 Class Members highly supports the adequacy of the proposed Settlement. *In re Diamond Foods, Inc*., 2014 U.S. Dist. LEXIS 3252, *9 (N.D. Cal. Jan. 10, 2014) ("Also supporting approval is the reaction of class members to the proposed class settlement. After 67,727 notices were sent to potential

---

[3] Under Fed. R. Civ. P. 23(e)(4), the Court may afford an additional opportunity for Class Members to request exclusion from the Settlement.

class members, there have been only 29 requests to opt out of the class and no objection to the settlement or the requested attorney's fees and expenses.")

### 2. Settlement Checks

Each Class Member will receive their settlement payment automatically, which will be in an average amount of $272.61 or $545.23, with the total amount paid being estimated at approximately $54,250.00.  The Class Recovery is separate from any amount to be paid for attorneys' fees and litigation costs.  Phoenix will send the settlement checks via U.S. mail after receiving approval from counsel to the Parties and funding to be received.

## VI. THE PROPOSED SETTLEMENT IS FUNDAMENTALLY FAIR, REASONABLE, AND ADEQUATE, AND SHOULD BE FINALLY APPROVED

### A. The Settlement Should Be Finally Approved by the Court

"Unlike the settlement of most private civil actions, class actions may be settled only with the approval of the district court." *Officers for Justice v. Civil Service Comm'n of City and County of San Francisco*, 688 F.2d 615, 623 (9th Cir. 1982). "The court may approve a settlement . . . that would bind class members only after a hearing and on finding that the settlement . . . is fair, reasonable, and adequate." Fed. R. Civ. P. 23 (e)(1)(C).  The Court has broad discretion to grant such approval and should do so where the proposed settlement is "fair, adequate, reasonable, and not a product of collusion." *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1026 (9th Cir. 1998).

"To determine whether a settlement agreement meets these standards, a district court must consider a number of factors, including: 'the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and

the reaction of the class members to the proposed settlement.'" *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at 625. The Court must balance against the continuing risks of litigation and the immediacy and certainty of a substantial recovery. *See Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 741 (S.D. N.Y. 1985).

The Ninth Circuit has long supported settlements reached by capable opponents in arms' length negotiations. In *Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009), the Ninth Circuit expressed the opinion that courts should defer to the "private consensual decision of the [settling] parties." Id. at 965 (citing Hanlon, 150 F.3d at 1027 (9th Cir. 1998)). The district court must exercise "sound discretion" in approving a settlement. *See Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), aff'd 661 F.2d 939 (9th Cir. 1981). However, "where, as here, a proposed class settlement has been reached after meaningful discovery, after arm's length negotiation conducted by capable counsel, it is presumptively fair." *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 822 (D. Mass. 1987); *In re Ferrero Litig.*, 2012 U.S. Dist. LEXIS 15174, *6 (S.D. Cal. Jan. 23, 2012) ("Settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair.") (citing *Nat'l Rural Telcoms. Coop. v. Directv, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004)).

In addition, courts consider whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed

method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

All of these factors support a finding that the settlement is fair, reasonable, and adequate. Moreover, the Settlement was reached with the assistance of experienced mediator, Todd Smith, Esq. *See Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*, 654 F.3d 935, 948 (9th Cir. Cal. 2011). Finally, Class Counsel and the Plaintiff agree that this Settlement is fair and reasonable; among other things, the Settlement will avoid costly and time-consuming additional litigation and the need for trial. Bacon Decl. at ¶¶ 40–44.

### 1.    The Strength of The Lawsuit and The Risk, Expense, Complexity, and Likely Duration of Further Litigation

Plaintiff believes he has a strong case against Defendants but recognizes the significant risks in litigating it to trial. Defendants have vigorously contested the claims asserted by Plaintiff in this Litigation from multiple angles, which are described in detail in the declaration of Mr. Bacon. *Id.* Defendants argued that all background checks were compliant with the FCRA. Defendants contend that the FCRA was not violated because the disclosures were clear and conspicuous and did not include extraneous information in violation of these statutes. Defendants also argued that the violations were not willful and thus, no penalties are owed on either account. *Id.* Furthermore, Defendants contend this claim not subject to class treatment and would make a trial in this litigation unmanageable. Thus, Defendants contended that no monies are owed in connection with this theory.

While both sides strongly believed in the merits of their respective cases, there are clearly numerous palpable risks to both sides in continuing the Litigation. If the

Litigation were to continue, challenges would likely be made to any class certification motion made by Plaintiff, thereby placing in doubt whether certification of a class could be obtained and/or maintained in the Litigation.  Also, additional substantive challenges to the claims might be raised, including a challenge on summary judgment.  The law is fluid in many of these areas, which means that inevitably there would be appeals that would drag out for years.  In considering the Settlement, Plaintiff and Class Counsel carefully balanced the risks of continuing to engage in protracted and contentious litigation, against the benefits to the Class.  As a result, Class Counsel supports the Settlement and seek its Final Approval.  *Id.*

Considering the potential risks and expenses associated with continued prosecution of the lawsuit, the probability of appeals by both sides, the certainty of delay, and the ultimate uncertainty of recovery through continued litigation, the proposed settlement is fair, reasonable, and adequate. *See Officers for Justice*, 688 F.2d at 624 ("Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation . . .")

## 2.    The Amount Offered In Settlement

As set forth above, Defendants have agreed to pay $75,000 to fund the settlement, which includes minimal notice and claims administration costs, providing CAFA notice, an Incentive Award to Plaintiff in the amount of $7,500. Class Counsel separately request an award of attorneys' fees and costs.  Id at ¶ 33. Actual Administration costs are capped at $8,500.  Thus, $54,250 of this Common Fund is estimated to be distributed to Class Members.  Class Members are not required to submit a claim to receive payment, and Phoenix received only one out.

It is well-settled that a proposed settlement may be accepted where the recovery represents a fraction of the maximum potential recovery. *See e.g.*, *Nat'l Rural Tele. Coop v. DIRECTV, Inc*., 221 F.R.D 523, 527 (C.D. Cal. 2004) ("well settled law that a proposed settlement may be acceptable even though it amounts to

only a fraction of the potential recovery"); *In re Global Crossing Sec. ERISA Litig*., 225 F.R.D. 436, 460 (E.D. Pa. 2000) ("the fact that a proposed settlement constitutes a relatively small percentage of the most optimistic estimate does not, in itself, weigh against the settlement; rather, the percentage should be considered in light of strength of the claims"); *In re Mego Fin. Corp. Sec. Litig*., 213 F.3d 454, 459 (9th Cir. 2000) (approving a settlement that comprised one-sixth of plaintiffs' potential recovery).

As the *Linder* Court explained, "… it is firmly established that the benefits of certification are not measured by reference to individual recoveries alone. Not only do class actions offer consumers a means of recovery for modest individual damages, but such actions often produce several salutary by-products, including a therapeutic effect upon those [entities] who indulge in [illegal] practices, aid to legitimate business enterprises by curtailing illegitimate [conduct], and avoidance to the judicial process of the burden of multiple litigation involving identical claims." *Linder v. Thrifty Oil Co*., 23 Cal. 4th 429, 445 (Cal. 2000) (internal quotations omitted).

In this case, unlike many class actions, the Class is receiving a substantial portion of what they could receive at trial, and possibly more than they would recover at trial. The FCRA carries damages of between $100 to $1,000. Class Members are receiving significantly more than the minimum penalty, without having to fill out a claim form, and irrespective of the many merits and procedural defenses that Defendant would raise. Accordingly, this is a very strong settlement. Class Counsel estimated that the result achieved for the Class was approximately 70% of a likely trial verdict, assuming the Class prevailed. This is based on a forecast, but it could be the case that even if the Class won a trial, they would receive less than through this settlement. Accordingly, these are very favorable terms. Clearly the Settlement constitutes a substantial benefit to Class Members.

### 3.     <u>The Extent of Discovery Completed</u>

The parties have actively litigated the action and engaged in full and complete discovery of the relevant issues involved in this litigation, including the size and scope of the Class. Class Counsel are satisfied that the information provided about the number of class members is accurate, given that it involved a complete production. The time and effort spent examining and investigating the claims militate in favor of final approval of the proposed Settlement, as the process strongly indicates that there was no collusion. *See In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008) ("Settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair.").

As detailed in the motion for preliminary settlement approval, Dkt. No. 51, the parties engaged conducted considerable discovery prior to counsel for the parties attending an all-day private mediation before Todd Smith, Esq. Thus, the litigation here had reached the stage where "the parties certainly have a clear view of the strengths and weaknesses of their cases." *In re Warner Communications*, 618 F. Supp. at 745. There is virtually no further discovery that would be necessary to evaluate the claims and the risks.

### 4.     <u>The Experience and Views of Class Counsel</u>

"The recommendations of plaintiff's counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979). The presumption of reasonableness in this action is fully warranted because the settlement is the product of arm's length negotiations conducted by capable, experienced counsel. *See M. Berenson Co.*, 671 F. Supp. at 822; Ellis, 87 F.R.D. at 18 ("that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight"); 2 Newberg on Class Actions § 11.24 (4th Ed. & Supp. 2002); Manual for Complex Lit., Fourth § 30.42.

It is the considered judgment of Class Counsel experienced in Employment class action litigation that this settlement is a fair, reasonable and an adequate

settlement benefiting Settlement Class Members nationwide. Class Counsel are experienced consumer class action lawyers, particularly as it concerns Employment and FCRA class actions.   This Settlement was negotiated without collusion by experienced and capable Class Counsel who recommend its approval. Bacon Decl., ¶¶ 39–43.  Given their experience and expertise, Class Counsel are well-qualified to not only assess the prospects of a case, but also to negotiate a favorable resolution for the class. Class Counsel have achieved such a result here in this class action, and unequivocally assert that the proposed Settlement should receive final approval.

### 5.   <u>The Reaction of Class Members To The Settlement</u>

To date, there are no objections and only one request for exclusion (Islas Decl., ¶¶ 8–9), which is important in evaluating the fairness, reasonableness and adequacy of the settlement and supports approval of the settlement here. *See Steinfeld v. Discover Fin. Servs*., 2014 U.S. Dist. LEXIS 44855, *21 (N.D. Cal. Mar. 31, 2014) (only specific objections or comments from 9 class members, and 239 out of the approximately 8 million class members chose to opt out); *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1044 (S.D. Cal. 2015) ("Upon considering the high rate of Class Member claims and the relatively low number of requests for exclusion, the Court finds the reaction of the Class to the Settlement favors approval of the [TCPA] Settlement."); *Stemple*, 2016 U.S. Dist. LEXIS 157207 at *7-8 (finding the lack of objections supported approval of the TCPA settlement).   Class Members have universally approved the Settlement.

### 6.   <u>The Rule 23(e)(2) considerations favor approval.</u>

The considerations outlined in Rule 23(e)(2) also support final approval of the settlement.  The first consideration is the adequacy of Plaintiff's and his counsel's representation of the Class. Class Counsel, who have a great deal of experience litigating and settling Employment and FCRA class action cases, wholeheartedly support the settlement.  Moreover, Plaintiff and Class Counsel have vigorously pursued the claims of Class Members, conducting substantial discovery and

weighing the risks of continued litigation. This consideration therefore supports approval.

The second consideration also supports approval because the settlement was negotiated at arms' length. This case involved hard-fought nature of this litigation, and the parties approached settlement discussions in the same way. None of the "red flags" of potential collusion the Ninth Circuit has identified exist in this case. *See In re Bluetooth Headset Products Liab. Litig*., 654 F.3d 935, 947 (9th Cir. 2011) (noting that plaintiffs' counsel may have allowed pursuit of their own self-interest to infect settlement negotiations when they receive a disproportionate portion of the settlement, the parties agree to a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds, or the parties agree that any fees not awarded will revert to defendants rather than be added to the class fund). The fees being requested by Class Counsel are being sought outside the Common Fund.

The third consideration — the adequacy of the relief — also supports Settlement. As discussed above, the estimated $272.61 or $545.23 per Class Member is more than adequate to warrant approval, particularly in light of the costs, risks and delay of trial and appeal. The distribution plan ensures that Settlement Class Members will be treated equitably relative to each other. The Class Recovery will be distributed to all Class Members and does not require a claim form. The Settlement provides a substantial benefit to Class Members.

Finally, Plaintiff addresses the reasonableness of the requested attorneys' fees in the contemporaneous motion.

### B. The Notice Program Complied with Rule 23 and Due Process

The notice program approved by the Court and implemented by Phoenix satisfied the requirements of Rule 23 and due process. Rule 23 provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). When the class is certified under

Rule 23(b)(3), the notice must also be the "best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). To comply with constitutional due process standards, the notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

The court-approved notice was "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections" and described "the action and the plaintiffs' rights in it." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). The notice was written in plain English and included the dates for class members to object and the final approval hearing. *See Chavez v. PHC Corp.*, No. 13-cv-01797-LHK, 2015 WL 581382, at *6 (N.D. Cal. Feb. 11, 2015) ("Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" (citation omitted)).

Phoenix mailed the Court-approved Notice to 127 (100%) Class members. Islas Decl. ¶¶ 6-7. In total, 127 Mail Notices were successfully delivered, representing 100% of the Settlement Class Members. *Id*. These numbers satisfy due process. *See* Federal Judicial Center's Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide, at p. 3 (2010) (recognizing that a reach of between 70-95% is reasonable); *see also, Wilson v. Airborne, Inc*., 2008 U.S. Dist. LEXIS 110411, *13-14 (C.D. Cal. Aug. 13, 2008) (court granted final approval of settlement where measurements used to estimate notice reach suggested that 80% of adults learned of the settlement).

## VII.  CONCLUSION

In sum, the parties have reached this Settlement following extensive arms' length negotiations, with the assistance of an experienced mediator. The Settlement is fair and reasonable to the Class Members who were afforded notice that complies with due process. For the foregoing reasons, Plaintiff respectfully requests the Court:

- Grant final approval of the proposed class action settlement;
- Order payment from the settlement proceeds in compliance with the Court's Preliminary Approval Order and the Agreement;
- Grant the Motion for Attorneys' Fees and Costs and Service Awards;
- Enter the proposed order of Final Approval of Class Action Settlement and Judgment; and,
- Retain continuing jurisdiction over the implementation, interpretation, administration and consummation of the Settlement.

Date: September 27, 2024

**The Law Offices of Todd M. Friedman, PC**

By:  _/s/ Todd M. Friedman_
    Todd M. Friedman
    *Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

Filed electronically on this 27th day of September, 2024, with:

United States District Court CM/ECF system

Notification sent electronically on this 27th day of September, 2024, to:

Honorable Judge John W. Holcomb.
United States District Court
Central District of California

And all counsel of record as recorded on the ECF page.


<u>s/Todd M. Friedman</u>
Todd M. Friedman, Esq.

**PROOF OF SERVICE**