O

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IRVING CARLOS ZUNIGA, on behalf of himself and all others similarly situated,<br><br>        Plaintiffs,<br><br>  v.<br><br>HOUSE FOODS AMERICA CORPORATION, a California corporation,<br>HOUSE FOODS HOLDING USA INC., a California corporation, and DOES 1-100, inclusive,<br><br>        Defendants. | Case No. 8:22-cv-00372-JWH-JDEx<br><br>**ORDER REGARDING PLAINTIFFS' MOTIONS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT [ECF No. 61] & ATTORNEYS' FEES [ECF No. 63]** |

## I. SUMMARY OF DECISION

Before the Court are two unopposed motions: (1) the motion of Plaintiff Irving Carlos Zuniga for final approval of a class action settlement;[1] and (2) Zuniga's motion for an award of attorneys' fees.[2] The Court conducted a hearing on the Motions in October 2024.[3] After considering the papers filed in support, as well as the arguments of counsel during the hearing, the Court **GRANTS** the Final Approval Motion and **GRANTS in part** and **DENIES in part** the Attorneys' Fees Motion.

## II. BACKGROUND

This class action settlement resolves two related actions that Zuniga filed against his former employer, Defendant House Foods America Corporation. In the first of those actions, Zuniga alleged that House Foods violated the Fair Credit Reporting Act ("FCRA") and the California Investigative Consumer Reporting Agencies Act ("ICRAA") by procuring credit reports and employment history information without making proper disclosures.[4] In the second action, Zuniga alleged that House Foods violated Cal. Labor Code § 432.7 by inquiring about job applicants' arrests that did not result in convictions.[5]

Specifically, Zuniga commenced the first class action in October 2021 in Orange County Superior Court.[6] Through that action, Zuniga asserted claims for relief under FCRA, ICRAA, and the Consumer Credit Reporting Agencies Act.[7] House Foods removed the action to this Court in March 2022, and the next month the parties stipulated that Zuniga would file a First Amended Complaint.[8] In July 2022, Zuniga filed

---

[1]   Pls.' Mot. for Final Class Action Settlement Approval (the "Final Approval Motion") [ECF No. 61].

[2]   Pls.' Mot. for Attorneys' Fees, Costs, and Incentive Award (the "Attorneys' Fees Motion") [ECF No. 63].

[3]   *See* Minute Order re Hr'g re Pls.' Mot. for Final Approval of Class Action Settlement (the "Minute Order") [ECF No. 66].

[4]   *See generally* Fourth Am. Compl. (the "Amended Complaint") [ECF No. 57].

[5]   *See generally id.*

[6]   *See* Decl. of Vedang J. Patel, Ex. 1 (the "Settlement Agreement") [ECF No. 51-2] ¶ 2.A.

[7]   *See id.*

[8]   Notice of Removal [ECF No. 1].

his Second Amended Complaint, which House Foods moved to dismiss.⁹ The Court granted House Foods's motion in September 2022,¹⁰ and Zuniga filed his Third Amended Complaint the following month.¹¹ House Foods then filed another motion to dismiss, but the Court denied that motion in substantial part and, in December 2022, stayed the case pending mediation.¹²

Zuniga initiated the second action in June 2021 by notifying the California Labor and Workforce Development Agency that House Foods was conducting unlawful background checks on current and prospective employees.¹³ Several months later, in November 2021, Zuniga filed a Private Attorneys General Act ("PAGA") action in state court, through which Zuniga sought civil penalties for the allegedly unlawful background checks and for other wage-and-hour violations.¹⁴ Zuniga filed a First Amended Complaint, which omitted the wage-and-hour allegations, in May 2022.¹⁵ House Foods filed a demurrer in July 2022, and the state court sustained that demurrer with leave to amend.¹⁶ Zuniga then filed his Second Amended Complaint, through which he sought civil penalties under PAGA and on behalf of a class of non-exempt House Foods employees.¹⁷ In December 2022, the parties stipulated to stay that action pending mediation.¹⁸

In June 2023, the parties participated in mediation regarding both of Zuniga's actions.¹⁹ The mediation was successful, and the parties entered into a Settlement Agreement that resolved the claims asserted in both actions.²⁰ Accordingly, in March 2024, Zuniga moved for preliminary approval of the Settlement Agreement.²¹

---

9   *See* Settlement Agreement ¶ 2.A.
10  *See id.*
11  *See id.* at ¶ 2.B.
12  *See id.*
13  *See id.* at ¶ 2.C.
14  *See id.*
15  *See id.* at ¶ 2.D.
16  *See id.*
17  *See id.*
18  *See id.*
19  *See id.* at ¶ 2.H.
20  *See id.* at ¶ 2.K.
21  *See* Pls.' Mot. to Certify Class for Preliminary Approval of Class Action Settlement (the "Preliminary Approval Motion") [ECF No. 51].

The Court did not immediately grant Zuniga's motion for preliminary approval. Rather, the Court expressed concern that the Settlement Agreement provided for an attorneys' fee award of $120,000, which was 1.6 times the gross settlement amount.[22] The Court also noted that the Settlement Agreement contained a clear-sailing arrangement for both the fee award and the service awards to the individual plaintiffs, which can suggest that a settlement is collusive.[23] The Court ordered Zuniga to provide additional briefing regarding the adequacy of the Settlement Agreement.[24]

After receiving Zuniga's briefing, the Court granted the Preliminary Approval Motion.[25] The Court noted, however, that Zuniga should "address the issues of disproportionality and the clear sailing arrangement at the final approval stage."[26]

In May 2024, after the Court granted its preliminary approval of the Settlement Agreement, Zuniga filed the operative Fourth Amended Complaint, thereby condensing all of Zuniga's claims into a single action.[27] Zuniga filed the instant Final Approval Motion and Attorneys' Fees Motion in September 2024.[28] The Court conducted a hearing on the Motions in October 2024, at which time the Court expressed additional concerns regarding the attorneys' fee request.[29] The Court then directed the parties to submit additional briefing regarding the proportionality of the attorneys' fee award.[30] Zuniga submitted his supplemental brief in November 2024.[31]

---

[22]   *See* Order Directing Pl. to File Supp'l Briefing in Supp. of Preliminary Approval Motion [ECF No. 54].

[23]   *See id.*

[24]   *See id.*

[25]   *See* Ord. Granting Preliminary Approval Motion (the "Preliminary Approval Order") [ECF No. 56].

[26]   *Id.* at 20:3–5.

[27]   *See* Amended Complaint.

[28]   *See* Final Approval Motion; Attorneys' Fees Motion.

[29]   *See* Minute Order.

[30]   *See id.*

[31]   *See* Pl.'s Supplement to Attorneys' Fee Motion (the "Second Supplemental Brief") [ECF No. 67].

## III.  FINAL APPROVAL OF THE SETTLEMENT AGREEMENT

### A.  Overview

As explained in the Preliminary Approval Order, the Settlement Agreement provides for a non-reversionary settlement fund in the amount of $75,000.[32] Of that amount, $5,000 is allocated to PAGA civil penalties, 25% of which will be distributed to aggrieved employees on a *pro rata* basis;[33] up to $10,000 is allocated to settlement administration costs;[34] and $7,500 is allocated to a service award for Zuniga.[35] Class members, in turn, will receive *pro rata* shares of the remainder.[36] The Settlement Agreement also provides for a separate attorneys' fee award of $120,000, which House Foods agreed not to challenge.[37] The Settlement Agreement is not contingent upon the approval of the service award or the attorneys' fee request, and, if the Court declines to grant the full requests, then the Settlement Agreement provides that the unearned funds will be included in the net settlement amount that is distributed to class members.[38]

After the Court granted its preliminary approval of the Settlement, notice was provided to class members, and only one opt-out was received.[39] Additionally, administration costs were capped at $8,500.[40] Thus, if the Court grants Zuniga's instant Motions in their entirety, the net settlement amount that will be paid to class members is $54,250, of which each of the 126 class members will receive either $272.61 or $545.23, depending on the violations that each class member experienced.[41]

In exchange for the class relief, Zuniga and all participating class members will release all claims that were or could have been asserted in this action, including FCRA claims, wage-and-hour claims, and claims asserted under Cal. Labor Code § 432.7.[42]

---

[32]  *See* Settlement Agreement ¶ 1.R.
[33]  *Id.* at ¶ 1.AA.
[34]  *See id.* at ¶ 1.MM.
[35]  *See id.* at ¶ 12.
[36]  *See id.* at ¶ 1.Y.
[37]  *See id.* at ¶ 11.
[38]  *See id.* at ¶¶ 11 & 12.
[39]  *See* Decl. of Lluvia Islas (the "Islas Declaration") [ECF No. 64] ¶ 8.
[40]  *See* Final Approval Motion 9:22.
[41]  Islas Declaration ¶ 12.
[42]  *See* Settlement Agreement ¶¶ 7.A–C.

Zuniga also agrees to release House Foods from any and all claims related to his employment.[43]

### B.     Legal Standard

The Federal Rules of Civil Procedure require court approval for class-action settlements. *See* Fed. R. Civ. P. 23(e). When the parties reach a settlement agreement before class certification, the district court uses a two-step process to approve a class-action settlement. *See Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). First, the court must certify the proposed settlement class. *See id.* Second, the court may finally approve a class action settlement "only after a hearing and only on finding that it is fair, reasonable and adequate." Fed. R. Civ. P. 23(e)(2); *see also Staton*, 327 F.3d. at 952. The Rules direct the district court to consider the following factors:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Additionally, with respect to Rule 23(e)(2)(C)(iii), a district court must undertake an additional inquiry to determine whether "class counsel have allowed [the] pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Cal. Pizza Kitchen Data Breach Litig.*, 129 F.4th 667, 674–75 (9th Cir. 2025) (quotation omitted). The purpose of scrutinizing the fee arrangement is to look for "potential collusion or unfairness to the class." *Briseño v. Henderson*, 998 F.3d 1014, 1026 (9th Cir. 2021). To ferret out that potential collusion, the Ninth Circuit instructs a district court to analyze three factors: (1) whether counsel "receive[d] a

---

[43]     *See id.* at ¶ 7.E.

disproportionate distribution of the settlement"; (2) whether the parties agreed to a "clear sailing arrangement"; and (3) whether the settlement includes a "kicker" or "reverter" clause. *Id.* at 1026-27. Although the presence of those factors is not a death knell for a proposed class action settlement, "[i]f these indicia of implicit collusion are present, then a proposed settlement must withstand an even higher level of scrutiny" than is "ordinarily required under Rule 23(e)." *Cal. Pizza Kitchen*, 129 F.4th at 675.

In the Ninth Circuit, a district court must also consider the eight so-called "*Churchill* factors":

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021) (quoting *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011), which was citing *Churchill Vill. L.L.C. v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004)). When the parties reach a settlement before a class has been certified, the court must apply "a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)" before granting final approval. *Saucillo v. Peck*, 25 F.4th 1118, 1130 (9th Cir. 2022).

Lastly, the district court must approve or reject the settlement as a whole. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ("It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness."). The court may not delete, modify, or rewrite particular provisions of the settlement. *See id.* The court must remain cognizant that the settlement "is the offspring of compromise; the question . . . is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Id.* In determining whether a proposed settlement should be approved, the Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

### 1. Class Certification

Zuniga seeks to certify the following settlement classes:

- **FRCA Class**: which includes all current, former, and prospective employees of House Foods who applied for a position with House Foods and had a Background Check performed during the period from October 15, 2019, through June 16, 2023;
- **BTB Class**: all current and former employees of House Foods in the State of California who applied for a position with House Foods and had a Background Check performed during the period from November 19, 2018, through June 16, 2023; and
- **Aggrieved Employees Class**: all current and former employees of House Foods in the State of California who applied for a position with House Foods and had a Background Check performed during the period from March 30, 2020, through June 16, 2023.[44]

The Court previously concluded that those three settlement classes satisfy the requirements of Rule 23.[45] Accordingly, the Court adopts its prior analysis and certifies the proposed settlement classes.

### 2. Final Approval Factors

#### a. Adequacy of Representation by Class Representatives and Class Counsel

Under Rule 23(e)(2)(A), a court must first decide whether the class representative and class counsel have adequately represented the class. That analysis includes, for example, "the nature and amount of discovery" undertaken in the litigation and "the actual outcomes of other cases." Fed. R. Civ. P. 23(e)(2)(A), 2018 Advisory Comm. Notes. It also includes the "actual performance of class counsel acting on behalf of the class." *Id.*

In this case, several aspects of the litigation suggest that this factor weighs in favor of approval. First, Class Counsel—attorneys Todd Friedman and Adrian Bacon of the Law Offices of Todd M. Friedman, P.C. and attorneys David D. Bibiyan and Vedang J. Patel of Bibiyan Law Group—have extensive experience with wage-and-hour class action litigation.[46] Second, the parties reached the settlement after actively litigating this case for several years, including through several motions to dismiss in both state and federal court.[47] Third, Class Counsel achieved meaningful relief for the class members, who will

---

[44] *See* Preliminary Approval Order 6:17–7:2.

[45] *Id.* at 7:10–12:5.

[46] *See* Decl. of Adrian R. Bacon [ECF No. 64] ¶¶ 45–62; Decl. of David D. Bibiyan [ECF No. 65] ¶¶ 4–16.

[47] *See generally* Settlement Agreement.

receive a significant portion of the statutory penalties available for the violations at issue in this case.[48] Therefore, the Court finds that Zuniga and Class Counsel have adequately represented the settlement class, which weighs in favor of final approval of the Settlement Agreement.

### b. Arm's Length Negotiations

The Court must next consider whether the settlement agreement "was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). As with the preceding consideration, this factor can be "described as [a] 'procedural' concern . . . looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2), 2018 Advisory Comm. Notes. "The presence and assistance of an experienced mediator in the settlement process strongly suggests that the settlement is non-collusive." *Lalli v. First Team Real Est.-Orange Cnty.*, 2022 WL 8207530, at *4 (C.D. Cal. Sept. 6, 2022) (internal quotation omitted). And "[t]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight." *Nguyen v. Radient Pharms. Corp.*, 2014 WL 1802293, at *3 (C.D. Cal. May 6, 2014) (alterations adopted).

Here, the parties participated in mediation with an experienced mediator, which "strongly suggests that the settlement is non-collusive." *Lalli*, 2022 WL 8207530, at *4 (internal quotation omitted). The negotiations also occurred between experienced counsel. *See Nguyen*, 2014 WL 1802293, at *3 ("The fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight." (alterations adopted)).

Additionally, although the Settlement Agreement contains a clear-sailing provision, the presence of a such a provision does not, in and of itself, render the proposed settlement agreement inadequate. *See Cal. Pizza Kitchen*, 129 F.4th at 677 ("[T]he presence of all three *Bluetooth* factors does not trigger a domino effect that makes a settlement per se collusive."). Rather, a clear-sailing provision is cause for concern when it "provid[es] for the payment of attorneys' fees separate and apart from class funds, which carries 'the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class.'" *Bluetooth*, 654 F.3d at 947. Put differently, a court must be wary of a clear-sailing provision if it appears possible that class counsel obtained that provision in exchange for a benefit that may otherwise have been provided to the class. *See Cal. Pizza Kitchen*, 129 F.4th at 676.

---

[48]   *See* Final Approval Motion 10:22–24.

The Court is satisfied that, here, the clear-sailing provision does not signify that sort of impermissible horse-trading. The parties agree that the class members will receive approximately 70% of the potential trial verdict and significantly more than the minimum penalties available for their claims.[49] Indeed, in view of the low statutory damages available for the claims at issue here, it is possible that the class could prevail at trial and still receive less than the class members will receive through this settlement.[50] Moreover, although the Settlement Agreement stipulates that the attorneys' fee award will be paid separately from the class settlement funds, the Settlement Agreement also provides that, if the Court awards attorneys' fees in an amount less than class counsel has requested, then those unearned fees will be distributed to class members, not reverted to House Foods. *See id.* And, perhaps most importantly, the Court is persuaded that the clear-sailing provision was included in the Settlement Agreement at House Foods's request to prevent Class Counsel from filing a contested attorneys' fee application, through which Class Counsel may have sought a greater attorneys' fee award.[51]

Accordingly, the Court concludes that the Settlement Agreement is the product of arms' length negotiations.

### c. Adequacy of the Relief Provided for the Class

Next, the Court must assess whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). Under this factor, the relief "to class members is a central concern." Fed. R. Civ. P. 23(e)(2)(C), 2018 Advisory Comm. Notes.

### i. Costs, Risks, and Delay of Further Litigation

"A[] central concern [when evaluating a proposed class action settlement] . . . relate[s] to the cost and risk involved in pursuing a litigated outcome." Fed. R. Civ. P. 23(e)(2), 2018 Advisory Comm. Notes. In this regard, the test of a settlement is not the maximum amount that the plaintiffs might have recovered, but, rather, whether the settlement is within a reasonable range. *See Rodriguez v. West*

---

[49]   *See id.* at 10:17–27.

[50]   *See id.*

[51]   *See* Supp'l Brief in Supp. of Mot. for Preliminary Approval (the "First Supplemental Brief") [ECF No. 55].

*Publishing Corp.*, 563 F.3d 948, 965–66 (9th Cir. 2009) (noting that "district judges naturally arrive at a reasonable range for settlement by considering the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted to present value"). The *Churchill* factors provide useful criteria for evaluating whether the settlement provides a reasonable recovery for the class members. *See In re Mego Financial Corp. Secs. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000).

The Court concludes that the settlement satisfies each of those concerns. First, "[a]n important consideration in judging the reasonableness of a settlement is the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement." *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 488 (E.D. Cal. 2010). The proposed settlement is "not to be judged against . . . what might have been awarded in a judgment in favor of the class." *Id.* This factor is generally satisfied when plaintiffs overcame barriers to make their case. *See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010). Here, Zuniga overcame several motions, including a motion to dismiss that the Court denied in substantial part.[52]

Second, continuing to litigate this case would require both parties to incur significant costs, risks, and delay, but the settlement allows the class to avoid those costs while still recovering a substantial portion of what the class could receive at trial. Specifically, because FCRA carries damages of between $100 and $1000, class members will receive more than the minimum penalty available for their claims without having to fill out a class form and without having to overcome the defenses that House Foods would raise.[53] Thus, the risk and expense of further litigation weighs in favor of final approval.

Third, because the parties reached a settlement before a class was certified, Zuniga would need to devote significant resources to obtaining class certification before proceeding to trial. Thus, significant costs and risks would arise associated with class certification, summary judgment, and trial. *See In re Portal Software, Inc. Sec. Litig.*, 2007 WL 4171201, at *3 (N.D. Cal. Nov. 26, 2007) ("Additional consideration of increased expenses of fact and expert discovery and the inherent risks of proceeding to summary judgment, trial and appeal also support the settlement."); *In re Netflix Privacy Litig.*, 2013 WL 1120801, at *6 (N.D. Cal. Mar. 18, 2013) ("The notion that a district court could decertify a class at any time is one that weighs in favor of settlement." (citation omitted)). Indeed, even if Zuniga were able to obtain class certification, a risk exists that the Court could later decertify the class. *See id.* ("The notion that a district court could decertify a

---

[52]   *See* Order Denying in Substantial Part Def.'s Mot. to Dismiss [ECF No. 35].

[53]   *See* Final Approval Motion 10:17-27.

class at any time is one that weighs in favor of settlement."). Thus, the risk of obtaining and maintaining class action status through trial weighs in favor of final approval.

Fourth, the Court finds that the amount offered in settlement—$75,000—strongly weighs in favor of final approval. As the Court noted in its Preliminary Approval Order, the parties estimate that $75,000 represents approximately 70% of the maximum recovery that Zuniga could obtain at trial.[54] Specifically, assuming that the Court grants both Motions in full, the class members will receive 4.31 times their minimum recovery at trial and 43% of their maximum recovery.[55] That is an exceptionally good result.

Fifth, the litigation is sufficiently advanced that the stage-of-proceedings factor also weighs in favor of approval. In evaluating whether the extent of discovery and stage of proceedings favor settlement approval, a court must determine whether the plaintiff has sufficient information to make an informed decision about the merits of his or her case. *See In re Mego*, 213 F.3d 454, 459 (9th Cir. 2000). Because this case has been pending for several years, and because the parties have extensively litigated it, the Court is satisfied that Zuniga obtained sufficient information to evaluate the strength of the class claims.

Sixth, the experience of counsel favors final approval. Specifically, the views of counsel are significant because "[t]hey are the ones who are most closely acquainted with the facts of the underlying litigation." *Vasquez*, 266 F.R.D. at 489. "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). As discussed above, Class Counsel have extensive experience handling class action cases, and the Court is satisfied that their experience has allowed them to evaluate the merits of the claims at issue in this action and the risks associated with continuing to litigate those claims.

Finally, the reactions of class members favor final approval. "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed [class action settlement] are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528–29 (C.D. Cal. 2004); *see also Arnold v. Fitflop USA, LLC*, 2014 WL 1670133, at *8 (S.D. Cal. Apr. 28, 2014) (concluding that the class members' reaction to the settlement "presents the most compelling argument favoring settlement"). Here, no class member

---

[54]   *See* Preliminary Approval Order 17:4-10.

[55]   *See* Second Supplemental Brief 3:24-26.

has objected to the settlement, and only one class member has opted out. Thus, this factor favors final approval.

In sum, the costs, risks, and delay of future litigation, as well as all of the applicable *Churchill* factors, favor final approval.

### ii. Effectiveness of the Method of Distributing Relief

The Court must next consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C). "Often it will be important for the court to scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims." Fed. R. Civ. P. 23(e), 2018 Advisory Comm. Notes. "A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." *Id.*

Here, the method of distributing relief is the best practicable method. In May 2024, the Settlement Administrator mailed notice packets to all 127 class members.[56] Only one class member opted out of the settlement, so, upon final approval, the remaining 126 class members will each receive payments equal to their *pro rata* share of the net settlement fund.[57] That method of distributing relief, which will provide class members with payment without requiring those class members to submit claim forms, is effective and appropriate.

### iii. Proposed Award of Attorneys' Fees and the *Briseño* Flags

The Court must also address "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(c). In considering the proposed award of attorneys' fees, the Court must be on watch for three "red flags" that tend to show collusion. *Cal. Pizza Kitchen*, 129 F.4th at 675.

The first flag is raised "when counsel receives a disproportionate distribution of the settlement." *Kaupelis v. Harbor Freight Tools*, 2021 WL 4816833, at *10 (C.D. Cal. Aug. 11, 2021). That flag is present here: Class Counsel has requested $120,000 in fees, which is nearly double the size of the gross settlement fund provided to the class. *See, e.g.*, *Cal. Pizza Kitchen*, 129 F.4th at 675 (concluding that a fee award of $800,000 was grossly disproportionate to a settlement for which the monetary value was "at most $950,000").

---

| 56 | *See* Islas Declaration ¶ 6. |
| 57 | *Id.* at ¶¶ 11 & 12. |

The second red flag is raised when the parties negotiate a "clear sailing arrangement," under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee. *Kaupelis*, 2021 WL 4816833, at *10. "A clear sailing provision signals the potential that a defendant agreed to pay class counsel excessive fees in exchange for counsel accepting a lower amount for the class members." *Briseño*, 998 F.3d at 1026–27. As discussed above, the Settlement Agreement contains a clear-sailing provision, which provides that House Foods will not challenge Class Counsel's fee request so long as that fee request is no greater than $120,000.

Lastly, the third flag is raised when the agreement contains a "kicker" or "reverter" clause that "returns unawarded fees to the defendant, rather than the class." *Kaupelis*, 2021 WL 4816833, at *10. Here, there is no reverter clause; instead, the Settlement Agreement contains a provision that distributes unawarded attorneys' fees to the class.

Because the Settlement Agreement contains only two of the three red flags that may indicate collusion, *Bluetooth*'s heightened scrutiny requirement is not triggered. *See Cal. Pizza Kitchen*, 129 F.4th at 676. But even if heightened scrutiny were required, the Court is satisfied that the settlement is non-collusive. As explained above, the Settlement Agreement offers a significant benefit to class members, and the Court concludes that the clear-sailing provision and attorneys' fee award do not inhibit the class members' recovery. Further, the Court is persuaded that the parties included the clear-sailing provision to limit the amount of attorneys' fees that Class Counsel would seek—not to provide Class Counsel with a portion of funds that would otherwise have been distributed to class members.

### iv.   Agreement Identification

The Court must also evaluate any agreement made in connection with the proposed settlement. *See* Fed. R. Civ. P. 23(e)(2)(C)(iv) & (e)(3). Here, the Settlement Agreement presently before the Court is the only agreement. Thus, the Court need not evaluate any additional agreements outside of the Settlement Agreement. *Accord Alvarez v. Sirius XM Radio Inc.*, 2021 WL 1234878, at *8 (C.D. Cal. Feb. 8, 2021). Thus, all four prongs under Rule 23(e)(2)(C) favor granting final approval.

### d.   Equitable Treatment of Class Members

The final Rule 23(e)(2) factor turns on whether the proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the

release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e)(2)(D), 2018 Advisory Comm. Notes.

The Court finds the treatment of the class members to be equitable because each class member will receive an equal payment of more than the minimum statutory damages available for his or her claim. Additionally, although the Settlement Agreement provides for a substantial service award to Zuniga, that award does not suggest that the Settlement Agreement treats class members inequitably because, if the Court approves a lower service award than Zuniga requested, the unawarded portion will be distributed to class members, rather than returned to House Foods.[58]

### 3. Conclusion on Final Settlement Approval

All factors used to assess the adequacy, fairness, and reasonableness of a class settlement—including both of the factors prescribed under Rule 23(e)(2) and the Ninth Circuit's *Churchill* factors—point in favor of granting final approval. Therefore, the Court **GRANTS** Zuniga's unopposed Motion for Settlement Approval.

## IV. ATTORNEYS' FEES, COSTS, SERVICE AWARDS, AND ADMINISTRATION COSTS

### A. Attorneys' Fees

Class Counsel also moves for an award of attorneys' fees and costs, in the amount of $120,000.[59] Of that amount, $14,250.41 represents litigation costs that Class Counsel actually and reasonably incurred, and the remainder represents attorneys' fees.[60] Because the Settlement Agreement is "not conditioned on attorneys' fees," the Court may approve or deny the request without "undoing settlement approval." *Cal. Pizza Kitchen*, 129 F.4th at 678–79.

When evaluating a request for attorneys' fees in connection with a class action settlement, a district court may award only "reasonable" attorneys' fees. Fed. R. Civ. P. 23(h). The Ninth Circuit has approved of two methods for calculating reasonable attorneys' fees in such cases. *See Cal. Pizza Kitchen*, 129 F.4th at 679. The first method is the so-called "lodestar" approach, through which the district court must first determine "the number of hours reasonably expended" and a "reasonable hourly

---

[58] *See* Settlement Agreement ¶ 12.

[59] *See generally* Attorneys' Fees Motion.

[60] *See id.* at 16:17–18.

rate." *In re Hyundai and Kia Fuel Economy Litig.*, 926 F.3d 539, 570 (9th Cir. 2019). Then the district court may adjust the fee award "upward or downward to account for various factors, . . . including the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Id.* The second method is the percentage-of-recovery method, which applies "[i]n class action cases where the defendants provide monetary compensation to the plaintiffs." *Id.* (quotation omitted). Under that method, "the court simply awards the attorneys a percentage of the fund sufficient to provide class counsel with a reasonable fee, using 25% as a benchmark." *Id.* (quotation omitted). The "touchstone" for either analysis, however, is the "benefit to the class," and "class counsel can only reap rewards if they have delivered results for class members." *Cal. Pizza Kitchen*, 129 F.4th at 679.

Zuniga urges the Court to rely upon the lodestar calculation, which, according to Class Counsel, produces a reasonable fee award of at least $299,925 and, more importantly, to ignore altogether the percentage-of-recovery method.[61] Specifically, Zuniga contends that, because this is "not a common fund case" and because Zuniga's claims are subject to a fee-shifting provision, the Court ***must*** employ the lodestar approach.[62] To do otherwise, Zuniga posits, would effectively write fee-shifting provisions out of California law and deter future plaintiffs from pursuing low-value claims on a class-wide basis because it will make it difficult for class counsel to recover the fees necessary to litigate those actions.[63]

The Court disagrees. To start, the Ninth Circuit has not held that the percentage-of-recovery benchmark applies only to common fund settlements. To the contrary, in *California Pizza Kitchen*, the Ninth Circuit addressed the applicability of the percentage-of-recovery method to a claims-made settlement, holding that "the district court erred by approving fees that appear excessive of settlement value." *Cal. Pizza Kitchen*, 129 F.4th at 679. Indeed, even when a district court conducts a lodestar analysis, the Ninth Circuit has held that the percentage-of-recovery method should be used to "ensure that fees are reasonable." *Id.* at 680. That is particularly true when, as is the case here, the monetary benefit to the class "is easily quantified." *Hyundai and Kia Fuel Economy Litig.*, 926 F.3d at 571.

The Court is also unpersuaded that the percentage-of-recovery benchmark is irrelevant in a case in which the underlying claim is subject to a fee-shifting provision. Although the Ninth Circuit has not specifically addressed the interplay between Rule 23(h) and state fee-shifting provisions, *see Briseño*, 998 F.3d at 1030, the Ninth

---

[61] *See id.* at 2:22–24 & 10:21-24.

[62] *See id.* at 10:21–24.

[63] *See id.* at 10:18–20.

Circuit has repeatedly instructed district courts to use a 25% benchmark when deciding whether an attorneys' fee request is reasonable, *see Cal. Pizza Kitchen*, 129 F.4th at 679. And the Ninth Circuit has previously directed district courts to apply the percentage-of-recovery benchmark to claims that are subject to fee-shifting provisions. *See Lowery v. Rhapsody International, Inc.*, 75 F.4th 985, 994 (9th Cir. 2023) (directing a district court to conduct a cross-check using the 25% benchmark in a Copyright Act case).

Finally, the Court is unconvinced that the potential deterrent effect of applying the 25% benchmark to low-value claims warrants awarding Class Counsel an above-benchmark quantum of fees. The Ninth Circuit has held that "[i]t does not matter that class action attorneys may have devoted hundreds or even thousands of hours to a case." *Id.* Instead, "the key factor in assessing the reasonableness of attorneys' fees is the benefit to the class." *Id.* Thus, when "the benefit to the class is meager," the attorneys' fees should also be meager—particularly if "class counsel harbored little realistic probability that they would recover substantial compensation for the class" at an early stage of the litigation. *Id.* ("No rational person would spend, say, $1 million in legal fees—and endure the hassles and headaches of litigation—to recover only relief that is a small fraction of that amount.").

Here, even accepting Class Counsel's lodestar calculation, the Court cannot conclude that attorneys' fees of $120,000—more than twice the net amount that would be distributed to the class—are reasonable. *See id.* Accordingly, the Court **AWARDS** $46,750.33, which consists of (1) litigation costs of $14,250.41; and (2) attorneys' fees of $32,499.92—25% of the net settlement fund—with the knowledge that the unawarded attorneys' fees and service award will be distributed among the class members.

**B.     Service Award**

Zuniga requests a $7,500 incentive award for serving as the class representative. Service awards, also known as "[i]ncentive awards," are "fairly typical" in class action cases. *Rodriguez*, 563 F.3d at 958. They are discretionary in nature and are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and . . . to recognize their willingness to act as a private attorney general." *Id.* at 958-59. "[D]istrict courts . . . evaluate the propriety of requested incentive payments 'using relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation.'" *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1057 (9th Cir. 2019) (quoting *Staton*, 327 F.3d at 977 (affirming $5,000 service awards but rejecting $20,000 awards as unreasonable)).

"Generally, in the Ninth Circuit, a $5,000 incentive award is presumed reasonable." *Lee v. Glob. Tel\*link Corp.*, 2018 WL 4625677, at \*12 (C.D. Cal. Sept. 24, 2018); *Bravo v. Gale Triangle, Inc.*, 2017 WL 708766, at \*19 (C.D. Cal. Feb. 16, 2017) (finding a $5,000 award reasonable for the class representatives' participation throughout the litigation and the risk to their reputation); *see also Roes, 1-2*, 944 F.3d at 1057. When the incentive award is unusually large, especially "relative to the size of the cash payments that can be claimed by class members," a court considers that discrepancy a "serious red flag[] that the defendants may have tacitly bargained for the named plaintiffs' support for the settlement by offering them significant additional cash awards." *Id.* (citing *Staton*, 327 F.3d at 975) ("finding that payments to certain identified class members that were 'on average, ***sixteen times*** greater' than the damages that other unnamed class members would receive, and together made up roughly 6% of the total settlement, 'raise[d] serious concerns as to [the settlement's] fairness, adequacy and reasonableness,' particularly because there was 'no sufficient justification in the record for this differential in the amount of damage awards and the process for awarding them'") (emphasis added).

In view of Zuniga's engagement in this litigation over the past three years, the Court concludes that a significant service award is warranted. But the Court is concerned that granting Zuniga's requested award of $7,500—which is 10% of the gross settlement fund—is unduly high. Accordingly, the Court **APPROVES** a $5,000 service award for Zuniga and **DIRECTS** that the award be paid pursuant to the terms of the Settlement Agreement.

### C.     Administration Costs

Finally, Zuniga requests $8,500 in administration costs for Phoenix Settlement Administrators, the claims administrator.[64] That request "appears to be reasonable, as those costs relate to designing and executing the administration of the settlement agreement, including mailing notices and processing correspondence from members of the class." *Brooks v. Life Care Centers of Am., Inc.*, 2015 WL 13298569, at \*5 (C.D. Cal. Oct. 19, 2015). Thus, the Court **APPROVES** those costs.

### V.  DISPOSITION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1.     Zuniga's Final Approval Motion [ECF No. 61] is **GRANTED**.

---

[64]     *See* Islas Declaration ¶¶ 1 & 14.

      2.      Zuniga's Attorneys' Fees Motion is **GRANTED in part** and **DENIED in part**. Specifically, an award of attorneys' fees at a rate of 25% of the net settlement award ($32,499.92) is **GRANTED**.

      3.      An award of litigation costs of $14,250.41 is **GRANTED**.

      4.      A service award for the named Plaintiff, Irving Carlos Zuniga, in the amount of $5,000 is **GRANTED**.

      5.      An award of administration costs for Phoenix Settlement Administrators in the amount of $8,500 is **GRANTED**.

      6.      Judgment shall issue accordingly.

**IT IS SO ORDERED.**

Dated: July 8, 2025

John W. Holcomb
UNITED STATES DISTRICT JUDGE